# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Tennessee

**FILED**
MAR 4 2016
Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

In the Matter of the Seizure of )
*(Briefly describe the property to be seized)* )
)
One 2004 Cadillac Escalade, ) Case No. 2:16-MJ- 39
VIN 1GYEK63N04R208966 ) Judge Corker
Registered in the name of Genevieve Boggs )

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the __Eastern__ District of __Arkansas__ is subject to forfeiture to the United States of America under __18__ U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C) and 982(a)(1) and/or 21 U.S.C. §§ 853 and 881. *(describe the property):*

2004 Cadillac Escalade, VIN 1GYEK63N04R208966, registered in the name of Genevieve Boggs, which is property that constitutes or is derived from proceeds obtained directly or indirectly as a result of the offenses of 21 U.S.C. §§ 846 and 841(a)(1), and any property involved in the offenses of 18 U.S.C. §§ 1956(h) and/or 1957 and any property traceable to such property.

The application is based on these facts:

The Affidavit attached hereto and incorporated herein by reference sets forth probable cause for the seizure of property in accordance with civil forfeiture pursuant to 21 U.S.C. § 881(b), 18 USC § 981(b)(1) and in accordance with criminal forfeiture pursuant to 21 USC § 853(f) and 18 USC § 982(b)(1). The property is subject to civil forfeiture pursuant to 21 U.S.C. § 881(a), 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 981(a)(1)(A) and is subject to criminal forfeiture pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982(a)(1).

☐ Continued on the attached sheet.

*Applicant's signature*

Jimmy J. Keith Cline, Jr., Special Agent, Internal Revenue Service

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3-4-2016 @ 8:51 am

*Judge's signature*

City and state: Greeneville, Tennessee

Clifton L. Corker, United States Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR SEIZURE WARRANT

I, Jimmy J. Keith Cline Jr., being duly sworn, depose and say as follows in support of the accompanying application for a seizure warrant for the following vehicles:

- 2005 Hummer H2, VIN 5GRGN23U25H100635, registered in the name of Pauletta Boggs;
- 2011 Chevrolet Camaro, VIN 2G1FA1ED0B9107317, registered in the name of Pauletta Boggs;
- 2004 Cadillac Escalade, VIN 1GYEK63N04R208966, registered in the name of Genevieve Boggs;
- 1999 Chevrolet Corvette, VIN 1G1YY22G1X5131266, registered in the name of Jack L. Jones;
- 2005 BMW 645, VIN WBAEK73495B325651, registered in the name of Jack L. Jones.

As detailed below, your affiant has probable cause to believe that these vehicles were purchased and concealed using funds provided by Billy Ray Allen (herein referred to as Allen).

## BACKGROUND OF AFFIANT

I am a Special Agent with the Internal Revenue Service, Criminal Investigation and have been so employed since January of 2002. I am currently assigned to the Johnson City, Tennessee office and have been so since July of 2008. The Johnson City, Tennessee office is part of the Nashville, Tennessee Field Office of the Internal Revenue Service, Criminal Investigation.

I have a Bachelor's of Business Administration (B.B.A.) in accounting from Mercer University located in Macon, Georgia. I graduated from the Federal Law Enforcement Training Center

(FLETC) in July of 2002. There I received instruction on investigative techniques relative to searches and seizures specific to conspiracies to defraud the United States and the related evidence and instrumentalities thereof. I have personally conducted or assisted in many investigations concerning these offenses. I have participated in the planning and/or execution of over 15 search and seizure warrants. I have attended several seminars taught by various agencies including but not limited to the Department of Justice's Asset Forfeiture and Money Laundering Section and the Internal Revenue Service, Criminal Investigation providing information on current trends in illicit laundering of money and current case law. I have also attended training conferences of the Organized Crime Drug Enforcement Task Force (OCDETF) to discuss schemes to violate the Foreign Bank Secrecy Act and the Money Laundering Control Act as they relate to the Internal Revenue laws. This training has focused upon the laws of the United States Code, Title 31, Section 5313 (Currency Transaction Reports (CTR's), Title 26, Section 6050I (Forms 8300, Required for Trade or Business Receipts of Over $10,000 Cash), Title 18, Sections 1956 and 1957 (Laundering of Monetary Instruments and Engaging in Monetary Transactions with Proceeds of Unlawful Activities), as the said laws are applicable to individuals who violate these laws. This training has specifically covered the means and techniques, by which individuals engaged in criminal activities derive, launder, conceal and spend their illegal profits, and their use of assets to facilitate their unlawful activity.

Since becoming a Special Agent in 2002, I have worked with agents and investigators from the Bureau of Alcohol, Tobacco, and Firearms (ATF), Drug Enforcement Administration (DEA), Immigration and Customs Enforcement (ICE), Federal Bureau of Investigation (FBI), Idaho State Police (ISP), Oregon Department of Justice (ODJ), the Tennessee Bureau of Investigation (TBI), and numerous county and city police departments. I have worked closely with these agencies/departments concerning the documentation of drug trafficking and narcotics proceeds through numerous OCDETF investigations. I have also assisted in locating assets for seizure related to narcotics investigations.

Based upon my training and experience, I know that drug traffickers often place assets in names other than their own to avoid detection of these assets by government and law enforcement agencies. I also know that even though these assets are placed in the names of

other persons or nominee names, the drug traffickers usually own and continue to utilize these assets and exercise control and dominion over them.

Based upon my training and experience, I know that drug traffickers frequently generate large amounts of cash from their criminal activities. I know that drug traffickers commonly utilize third parties to turn cash into financial instruments that can easily be used to purchase assets and conceal the true identity of the owner by placing the asset in a nominee name.

The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested seizure warrant and does not set forth all of my knowledge about this matter.

## STATEMENT OF PROBABLE CAUSE

Your affiant has been assisting the TBI, DEA, and local law enforcement in their investigation of Allen since at least September 2015 to document the flow of illegal proceeds derived from drug trafficking as those proceeds relate to violations of Title 18, United States Code § 1956 and 1957 within the Eastern District of Tennessee.

This investigation has included the identification and documentation of drug trafficking violations pursuant to Title 21 United States Code §§ 846 and 841(a)(1). Title 21 United States Code §§ 846 and 841(a)(1) are specified unlawful activities for purposes of Title 18 United States Code § 1956 and 1957.

It is a violation of Title 18 United States Code § 1956(a)(1)(B)(i) for individuals to conduct financial transactions involving proceeds of a specified unlawful activity for the purposes of concealing or disguising the nature, location, the source, the ownership, or the control of the proceeds of a specified unlawful activity.

93  It is a violation of Title 18 United States Code § 1956(a)(1)(B)(ii) for individuals to conduct a
94  financial transaction involving proceeds of a specified unlawful activity for the purposes of avoiding
95  a transaction reporting requirement under State or Federal law.
96
97  It is a violation of Title 18 United States Code § 1956(h) for individuals to conspire to commit
98  violations of Title 18 United States Code §§ 1956(a)(1)(B)(i) and 1956(a)(1)(B)(ii).
99
100 It is a violation of Title 18 United States Code § 1957 for individuals to engage in a monetary
101 transaction in criminally derived property that is of a value greater than $10,000 and is derived from
102 specified unlawful activity.
103
104 Your affiant respectfully submits that there is probable cause to believe that Allen, directly and/or
105 through others, sold controlled substances, namely cocaine base "crack," and that financial
106 transactions from the sale of controlled substances served to disguise the true purchasers of the
107 financial instruments, i.e. money orders and cashier's checks, or the true owner of the money used
108 to purchase vehicles by allowing the said vehicles to be placed in the names of "straw purchasers"
109 or nominees, in violation of 18 U.S.C. §§ 1956 and 1957.
110
111 Title 21, United States Code § 841(a)(1), makes it an offense to knowingly and intentionally and
112 without authority distribute or possess with the intent to distribute a controlled substance. Title
113 21, United States Code § 846, makes it an offense to attempt or conspire to commit any offense
114 defined in Chapter 13, Part D of Title 21, to include distributing and possessing with the intent to
115 distribute controlled substances. A "controlled substance" is a drug or other substance included
116 in the schedules (I through V) established under Chapter 13, Part B of the Controlled Substances
117 Act (herein referred to as CSA). Title 21, United States Code §§ 841(a)(1) and 846 are specified
118 unlawful activities for Title 18, United States Code §§ 1956 and 1957 as defined under Title 18,
119 United States Code § 1956(c)(7).
120
121
122
123

## INVESTIGATION

Your affiant is conducting a financial investigation with the assistance of TBI, DEA, and local law enforcement related to the investigation of controlled substances for violations of federal money laundering statutes, more specifically Title 18, United States Code §§ 1956 and 1957. Your affiant is assisting DEA special agents, TBI special agents, and task force officers with their investigation of violations of Title 21, United States Code §§ 841(a)(1) and 846, involving the sale and distribution of cocaine.

On March 28, 2011, a Form 8300 was filed by Pyramid Used Cars located at 936 S Third Street in Memphis, Tennessee for a transaction that occurred March 18, 2010. The Form 8300 indicates that a 2004 Cadillac Escalade, VIN 1GYEK63N04R208966 was purchased from Pyramid Used Cars in which $17,100.00 in United States currency and $1,000 in money orders was provided for the purchase of the vehicle. The Form 8300 indicates that the transaction was conducted on the behalf of Genevieve Boggs, SSN xxx-xx-3868. The Form 8300 also states that Allen was the individual who provided the United States currency and money orders. (Agent Note: Pyramid Used Cars was the subject of a federal money laundering investigation by the Internal Revenue Service, Criminal Investigation out of Memphis, Tennessee. As part of that case, it was noted that Forms 8300 were not being filed on cash transactions over $10,000.00 for vehicles being sold to known narcotics dealers. Pyramid Used Cars was advised to file Form 8300s, which were eventually filed late. As part of that investigation, Wayne McAlpin was eventually indicted on federal money laundering and structuring charges and sentenced to 15 months imprisonment.)

On June 15, 2012, your affiant interviewed Allen at Northeast Correctional facility located at 5249 Highway 67 West in Mountain City, Tennessee as part of an investigation into Pyramid Used Cars. Allen was an inmate at the time. Allen stated he was incarcerated for narcotics found at his residence during a raid by police. Allen stated the narcotics found during the raid belonged to his friend, but he was arrested and eventually incarcerated. The record obtained from the Tennessee Criminal Justice Portal indicates that Allen was arrested and eventually incarcerated under TCA 39-17-417 for "Schedule II drugs: Fac. Cocaine." Allen admitted that he had, in the past, been involved in narcotics trafficking. Allen stated he had purchased vehicles from

Pyramid Used Cars ("on Third Street in Memphis"). He mainly dealt with Wayne McAlpin (McAlpin). S/A Cline displayed a picture of McAlpin and Allen identified him as the McAlpin he dealt with. Allen stated he always traded vehicles with McAlpin and provided a down payment with the vehicles he traded in or with United States currency. Allen stated he never provided more than approximately $6,000 (six thousand U.S. dollars) to $8,000 (eight thousand U.S. dollars) in currency to McAlpin at a time, and set up a payment plan to pay off the rest of the price of the vehicles he purchased. Allen stated McAlpin usually held something from him until the vehicle was fully paid, which S/A Cline understood to mean the title documents were withheld until the vehicle was fully paid off. Allen stated McAlpin made it easy to buy and sell vehicles. Allen stated McAlpin never asked what Allen did for a living, and Allen didn't ever remember filling out any paperwork which would list what his employment was. Allen did remember filling out some paperwork, but cannot remember what the paperwork was about, except that it never asked about his employment. Your affiant asked Allen about a 2004 Cadillac Escalade. Allen stated he sold McAlpin an Impala SS with customized interior and Lamborghini doors and received $12,000 from McAlpin for that vehicle. Allen also sold to McAlpin a customized Caprice with starburst paint for $8,500. McAlpin would write a check to Allen for the vehicles he purchased and Allen would cash them at the bank listed on the checks. Allen states he cashed those checks and provided the money to McAlpin for the purchase of the Escalade. Allen advised agents he was dealing drugs after he got out of prison, but eventually backed away from narcotic trafficking. Allen stated the vehicles he had for trade-in to McAlpin were "obtained prior" which your affiant understood to mean the vehicles were purchased using proceeds of prior narcotics trafficking activities, which was prior to Allen's "legitimate" work.

In March of 2015, the Second Judicial Drug Task Force (2nd DTF), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and Kingsport Police Department (KPD) Vice Unit initiated an investigation into the drug trafficking activities of the Billy Allen Drug Trafficking organization (hereinafter referred to as the Allen DTO). On several occasions, agents have used a confidential source (CS) to make controlled purchases of crack cocaine from the Allen DTO to include Allen, Tommy Allen, and others. On each of these occasions, the transaction was coordinated by the CS contacting one of the members of the Allen DTO on a cellular telephone, utilizing phone number 423/ 480-1682. Each of these controlled purchases, were monitored and recorded by

agents. Additionally, each of the phone calls from the CS to cellular telephone, number 423/480-1682, were monitored and recorded. Your affiant has included in this Affidavit information provided by a confidential source. Confidential sources may be referred to in the masculine form; however, this reference is not necessarily an indication of the true gender of the confidential source, so as to protect the identity of such source.

Confidential Source No. 1 ("CS-1") has provided truthful, accurate, detailed and reliable information to law enforcement. This information has been provided to investigators with the TBI, 2nd DTF, and the KPD Vice Unit since December 11, 2013. The accuracy and reliability of the information obtained from CS-1 has been confirmed through independent investigation and corroboration, including but not limited to, surveillance, toll analysis, and intelligence provided by other law enforcement officers.

In November of 2013, KPD Vice Detectives were conducting surveillance of a known narcotics dealer in Kingsport, Sullivan County, Tennessee. Detectives observed a vehicle arrive at the residence, stay a short period of time, then depart the residence. Detectives later conducted a traffic stop on this vehicle for a traffic violation. CS-1 was the driver of the vehicle and was accompanied by a female passenger. The female was found to be in possession of crack cocaine. Detectives interviewed CS-1 regarding narcotic dealers in Kingsport, Sullivan County, Tennessee. CS-1 provided information on multiple organizations in Kingsport, Sullivan County, Tennessee known to the Detectives. The information provided by CS-1 was found to be accurate and later corroborated. CS-1 agreed at that time to become a confidential source to be utilized by KPD Vice.

During the course of this investigation, while working on behalf of law enforcement agents, CS-1 has participated in several controlled drug transactions involving the Allen DTO. A phone call placed by CS-1 to the Allen crack cocaine distribution telephone, utilizing phone number 423/480-1682, a phone known to have been utilized by the Allen DTO, facilitated each of these controlled drug transactions. CS-1 is a paid confidential source due to his cooperation with law enforcement. CS-1 initially became involved with the Allen DTO on September 22, 2015. CS-1 has a criminal record that includes driving offenses, drug offenses, and failure to appear. CS-1

217  has no known pending charges. Based on the foregoing, it is believed the information supplied
218  by CS-1 to be truthful, reliable and accurate.
219
220  Based upon the information received from CS-1, in June of 2015, the DEA Johnson City Post of
221  Duty (JCPOD) initiated an investigation into the drug trafficking activities of the Allen DTO.
222  Based upon this investigation, your affiant believes that Allen is the leader of this DTO in
223  Tennessee. Your affiant believes Allen oversees and directs the supply, manufacture,
224  transportation, and distribution of crack cocaine and that the Allen DTO uses a sophisticated
225  transportation network to move drugs and money in support of this criminal operation.
226
227  On September 23, 2015, the KPD Vice Unit, TBI, and the 2nd Judicial Drug Task Force
228  conducted a controlled drug transaction from Michael Hamelin. Under the direction of law
229  enforcement, CS-1 placed a telephone call to the Allen DTO telephone. Later that day, at the
230  direction of law enforcement agents, CS-1 was driven to 800 Burwind Court, Kingsport, Sullivan
231  County, Tennessee by an undercover officer and purchased approximately 0.5 grams of crack
232  cocaine from Michael Hamelin for $100.00 from within an apartment utilized by the Allen DTO
233  to distribute crack cocaine. This transaction was monitored and recorded using a covert audio
234  and video recording device. CS-1 was provided $100.00 by KPD Vice to purchase the crack
235  cocaine. CS-1 was driven to the residence by Bristol Tennessee Police Department Detective
236  Ginger Crowe, working in an undercover capacity, who recovered the purchased crack cocaine
237  following the transaction. The purchased substance field tested positively for the presence of
238  cocaine. The recovered substance was sent to the TBI laboratory for testing to confirm the
239  identity of the substance and its weight.[1]
240
241  On October 29, 2015, the KPD Vice Unit, TBI, and the 2nd Judicial Drug Task Force conducted a
242  controlled drug transaction from Tommy Allen. Under the direction of law enforcement, CS-1
243  placed a telephone call to the Allen DTO telephone. Later that day, at the direction of law
244  enforcement agents, CS-1 was driven to 800 Burwind Court, Kingsport, Sullivan County,
245  Tennessee by an undercover officer and purchased approximately 1 gram of crack cocaine from

---

[1] Unless otherwise indicated, each controlled purchase outlined in this affidavit tested positively for the presence of cocaine and was then sent to the TBI laboratory for testing to confirm the identity of the substance and its weight.

246  Tommy Allen for $100.00 from within an apartment utilized by the Allen DTO to distribute
247  crack cocaine. This transaction was monitored and recorded using a covert audio and video
248  recording device. CS-1 was provided $100.00 by KPD Vice to purchase the crack cocaine. CS-1
249  was driven to the residence by 2nd Judicial Drug Task Agent Daniel Lane, working in an
250  undercover capacity, who recovered the purchased crack cocaine following the transaction. The
251  purchased substance field tested positively for the presence of cocaine. The recovered substance
252  was sent to the TBI laboratory for testing to confirm the identity of the substance and its weight.
253
254  On November 12, 2015, the KPD Vice Unit and the TBI conducted a controlled drug transaction
255  from Michael Hamelin. Under the direction of law enforcement, CS-1 placed a telephone call to
256  the Billy Allen DTO telephone. Billy Allen answered the telephone call and instructed CS-1 to
257  come to 800 Burwind Court Kingsport, Sullivan County, Tennessee to purchase crack cocaine.
258  Later that day, at the direction of law enforcement agents, CS-1 was driven to 800 Burwind
259  Court, Kingsport, Sullivan County, Tennessee by an undercover officer and purchased
260  approximately 1 gram of crack cocaine from Michael Hamelin for $100.00 from within an
261  apartment utilized by the Allen DTO to distribute crack cocaine. Looking directly at the
262  apartment building and starting from the left this apartment is the third door to the right from the
263  end of the building. This transaction was monitored and recorded using a covert audio and video
264  recording device. CS-1 was provided $100.00 by the TBI to purchase the crack cocaine. CS-1
265  was driven to the residence by KPD Detective Noah Tidwell, working in an undercover capacity,
266  who recovered the purchased crack cocaine following the transaction. The purchased substance
267  field tested positively for the presence of cocaine. The recovered substance was sent to the TBI
268  laboratory for testing to confirm the identity of the substance and its weight.
269
270  On November 22, 2015, CS-1, under the direction and control of law enforcement, received a
271  monitored and recorded telephone call from Allen. During this telephone call, Allen instructed
272  CS-1 that each time he purchased crack cocaine at 800 Burwind Court, Sullivan County,
273  Tennessee, to have the distributor write down how much money CS-1 spent and to initial the
274  amount. Allen advised CS-1 that each time CS-1 purchased $2,000.00 in crack cocaine Allen
275  would pay him $500.00.
276

277  On January 5, 2016, the KPD Vice Unit, 2nd Judicial Drug Task Force and the TBI conducted a
278  controlled drug transaction from Eileen Hill. Under the direction and control of law
279  enforcement, CS-1 placed a telephone call to the Allen DTO telephone. Eileen Hill answered the
280  telephone call and instructed CS-1 to come to 800 Burwind Court to purchase crack cocaine. Hill
281  also advised CS-1 to call back when he was close to arriving. CS-1 placed a second monitored
282  and recorded telephone call to the Allen DTO telephone and Hill answered. Hill instructed the
283  CS to go to "Bone's" (known to agents as Michael Hamelin) apartment. Later that day, at the
284  direction of law enforcement agents, CS-1 was driven to 800 Burwind Court, Kingsport,
285  Tennessee by an undercover officer. When the undercover officer and CS-1 arrived, CS-1 exited
286  the vehicle and walked to Bone's apartment. Hill exited the apartment and met CS-1. Both CS-1
287  and Hill entered Bone's apartment. CS-1 purchased approximately 1 gram of crack cocaine from
288  Hill for $100.00. Hamelin was also present during the controlled transaction. This transaction
289  was monitored and recorded using a covert audio and video recording device. CS-1 was provided
290  $100.00 by the KPD Vice unit to purchase the crack cocaine. CS-1 was driven to the residence
291  by 2nd Judicial Drug Task Force Agent Daniel Lane, working in an undercover capacity, who
292  recovered the purchased crack cocaine following the transaction. Agent Lane observed Hill exit
293  the fourth apartment from the left of the building and later positively identified Hill from a
294  Tennessee State driver's license photograph. Based on the observations of the undercover agent,
295  it is believed that Hill exited the residence with crack cocaine and completed the purchase of
296  crack cocaine with CS-1 in Bone's apartment. The purchased substance field tested positively
297  for the presence of cocaine. The recovered substance was sent to the TBI laboratory for testing to
298  confirm the identity of the substance and its weight.
299
300  Allen was indicted by a Federal Grand Jury in Greeneville, Tennessee on January 12, 2016 for
301  violations of Title 21 U.S.C. §§ 841 and 846. Federal search warrants were executed at Allen's
302  residence, located at 800 Burwind Court in Kingsport, Tennessee on January 12, 2016.
303
304  On January 26, 2016, Randall Gibson (hereinafter referred to as Gibson) was interviewed at his
305  business, Rainbow Motors, located in Kingsport, Tennessee by your affiant. Gibson identified a
306  person in a photo as an individual named "Grill", known to investigators as Allen. Allen has
307  been to the dealership to purchase vehicles for over a year. Gibson never inquired what Allen did

for a living because Gibson did not consider it any of his business. Allen would always look around until something caught his eye that he wanted to purchase. Allen most recently purchased a BMW for his mother. Gibson was able to pull the paperwork and it indicated that VIN - WBANE53547CK92172 for a white BMW 525 was purchased by Allen. Allen advised Gibson that the purchase was for his mother as a Christmas gift. The vehicle was placed into Charrise Nicole Turner's (Turner) name, whom Gibson believed to be Allen's mother (Agent's Note: Allen's mother is known to be Della Mae Allen, who resides in Arkansas). Allen signed the documents in the name of Charrise Nicole Turner. When pressed if Turner was present for the transaction, Gibson advised the agents she was not. Gibson stated that as long as the vehicle purchases were for the family members, he would allow vehicles to be placed into names other than that of the actual purchaser without their presence. Allen very seldom paid for the vehicles in full. Gibson would accept money down and payments until the vehicles were fully paid. Allen always paid in United States currency. Gibson stated that Allen would sometimes pay $2,000.00 here and $2,000.00 there until the vehicle was fully paid. Allen purchased a total of eight to ten vehicles from Rainbow Motors, none of which were ever placed into Allen's name. These purchases included vehicles placed into the names of Pauletta Boggs and Jack Jones.

Gibson provided the Bill of Sale for the following vehicles:

- On March 31, 2015, a 2005 Hummer, VIN 5GRGN23U25H100635, was purchased for $14,785.00 after taxes. A 2005 Chevrolet Equinox was traded in netting a $4,500.00 trade in allowance. The vehicle was placed into the name Pauletta Boggs.

- On July 24, 2015, a 2011 Chevrolet Camaro, VIN 2G1FA1ED0B9107317, was purchased for $15,651.04 after taxes. The vehicle was placed into the name Pauletta Boggs. On July 24, 2015, $8,000.00 was paid. On September 25, 2015, $1,500.00 was paid. On October 16, 2015, $400.00 was paid.

On January 26, 2016, Pauletta Boggs was interviewed at her residence by your affiant. Pauletta Boggs was able to identify Allen and knew him as "Grill." Pauletta Boggs has known Allen for

339  approximately 14 years and Allen was Pauletta Boggs' drug dealer. Pauletta Boggs allowed
340  Allen to utilize her name in the purchase of approximately five vehicles. The vehicles included a
341  2000 Nissan Maxima, a 2003 Chevrolet Impala, a 2011 Chevrolet Camaro, a 2007 Toyota
342  Camry, and a 2005 Hummer H2. As soon as the vehicles were purchased, Pauletta Boggs would
343  sign the back of the title and give the title to Allen. Allen would also go with Pauletta Boggs to
344  Direct Insurance to have the vehicles added to Pauletta Boggs' insurance policy. Allen would
345  pay for the insurance on those vehicles. In one instance, Pauletta Boggs remembers Allen calling
346  her and asking her to meet him at Rainbow Motors on Stone Drive in Kingsport, Tennessee just
347  to fill out the paperwork. Allen picked out the vehicles and paid for the vehicle. A male at
348  Rainbow Motors assisted Pauletta Boggs with the paperwork. Pauletta Boggs states she did not
349  want to do it at first, but Allen said he could not do it because of his job as a driver of an 18-
350  wheeler. Allen told Pauletta Boggs that he could only be allowed so many vehicles, that he was
351  already at his limit, and this was the reason she had to place them into her name instead of his.
352
353  On January 26, 2016, Jack Jones (hereinafter referred to as Jones) was interviewed at his
354  residence by your affiant. Jones was able to identify Allen and knew him as "Grill". Jones has
355  known Allen for approximately 15 years. Jones would take individuals who wanted to purchase
356  drugs to a spot predetermined by Allen and would get paid for his assistance. Jones described
357  this activity as being the "wheels." Jones was asked by Allen to place vehicles in his name for
358  Allen and was paid for those actions. This first occurred after Jones approached Allen about
359  borrowing money. Jones would meet Allen at the dealership where the transaction for the vehicle
360  purchase would occur. Jones would then allow the vehicle to be placed into his name although
361  Allen was the true owner. Jones would be paid for his time. Jones would then meet Allen at
362  Jones' insurance company, Direct Insurance, where the vehicle would be insured in Jones' name,
363  but Allen would pay the bill. Jones stated that the only vehicle that he actually owns is the
364  Hyundai Sonata in his driveway. Any other vehicles reported on his record actually belong to
365  Allen. Jones stated that the white Chevrolet Corvette was one of the vehicles belonging to Allen.
366
367  The Bill of Sale and Title as obtained from the State of Tennessee Department of Revenue
368  Vehicle Services Division indicates the following for the 2005 BMW 645, VIN
369  WBAEK73495B325651:

- According to the Bill of Sale and title, the purchase was made October 2, 2015 at Friendship Cars of Kingsport addressed as 1848 East Stone Drive in Kingsport, Tennessee for $19,997.00. A 2007 Toyota Camry, VIN JTNBB46K273041544 was traded in by Jack L. Jones for a trade in value of $7,200.00. The BMW was placed into the name Jack L. Jones.

On February 3, 2016, Genevieve Boggs was interviewed by your affiant and a TBI agent at the Food City in Church Hill, Tennessee. Genevieve Boggs knew Allen as "Grill". Genevieve Boggs last spoke to Allen approximately six months ago. Approximately six years ago, Genevieve Boggs was at Allen's residence and remembers seeing cocaine lying around approximately twelve inches by twelve inches in size. Genevieve Boggs was aware that Allen would cook the cocaine, but never at his own residence. Genevieve Boggs was a past user of cocaine supplied by Allen and has been present with Allen when he drove to Arkansas with a Nike shoebox full of United States currency from within the Eastern District of Tennessee. Allen advised Genevieve Boggs of a car dealership where he could purchase high end vehicles which would be purchased in cash. Genevieve Boggs has been to Pyramid Used Cars in Memphis, Tennessee to assist Allen with the purchase of a vehicle. Allen told Genevieve Boggs he had too many vehicles and if he purchased any others in his name, he would have to get a dealer's license. Genevieve Boggs remembers that Allen paid approximately $8,000.00 to $10,000.00 in United States currency for the purchase of a Cadillac Escalade, which was placed in Genevieve Boggs' name. Allen took Genevieve Boggs to Direct Insurance on Stone Drive in Kingsport, Tennessee to pay for the vehicle insurance on the Cadillac Escalade. The policy was also placed into Genevieve Boggs' name and she has never paid for the insurance policy. Allen advised Genevieve Boggs that his occupation was being a truck driver. Genevieve Boggs later came to the conclusion that Allen does not actually have a job.

On February 4, 2016, your affiant interviewed Tony Houser (hereinafter referred to as Houser), owner of Houser & Sons Auto, at his business located at 3183 Highway 126 in Blountville, Tennessee. His son, Jason Houser was also present during the interview. Houser was shown the title history paperwork for a 1999 Chevrolet Corvette, VIN 1G1YY22G1X5131266. Houser did

not immediately remember the sale, which took place on July 3, 2014. Your affiant showed Houser two photos; one of Jones and one of Allen. Houser recognized Allen as "Grill". Allen told Houser that he moved to the area from Memphis. Houser then remembered that Allen brought Jones to Houser & Sons Auto to purchase the 1999 Chevrolet Corvette. Allen paid $4,500.00 United States currency down, and then paid several cash installments to pay off the vehicle. Houser held the title until the Corvette was fully paid. The last payment was unusual to Houser because Allen paid in five dollar bills, ten dollar bills, and twenty dollar bills and appeared to struggle to come up with the final payment amount. Allen also purchased rims and tires and had them painted white and installed on the vehicle. Houser provided copies of several of the payments. Houser thought the vehicle was to be purchased by Allen for Jack Jones.

The Bill of Sale as obtained from the State of Tennessee Department of Revenue Vehicle Services Division indicates the following for the 1999 Chevrolet Corvette, VIN 1G1YY22G1X5131266:

- The purchase was made July 3, 2014 at Houser & Sons Auto addressed as 3183 Highway 126 in Blountville, Tennessee for $14,525.00 after taxes. The vehicle was placed into the name Jack L. Jones.

Income tax returns and return information were requested from the Internal Revenue Service via an Ex-Parte Order and received for Allen for the years 2010, 2011, 2012, 2013, and 2014. Those records indicate that Allen has failed to file federal tax returns for the years listed above. Those records also indicate there are no records of reported wages to the Internal Revenue Service for Allen for the years listed above.

**Pertinent Statutes**

I am familiar with the following violations of federal law:

21 U.S.C. § 841 - "…it shall be unlawful for any person knowingly or intentionally – (1) manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or

dispense, a controlled substance; or (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance."

21 U.S.C. § 846 - "Any person who attempts to conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

18 U.S.C. § 1956 – "Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, with the intent to promote the carrying on of unspecified unlawful activity;…knowing that the transaction is designed in whole or part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unspecified unlawful activity; or to avoid a transaction reporting requirement under State or Federal Law."

18 U.S.C. § 1957 – "Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity shall be punished as provided in subsection (b).

I am also familiar with other federal statutes pertinent to this affidavit:

Proceeds of a violation involving drug trafficking are criminally forfeitable pursuant to 21 U.S.C. § 853 including "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation."

Proceeds of a violation involving drug trafficking are civilly forfeitable pursuant to 21 U.S.C. § 881(a)(6) including "all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and

15
Case 2:16-mj-00039-MCLC   Document 3   Filed 03/04/16   Page 16 of 19   PageID #: 18

all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

Proceeds of a violation involving money laundering are criminally forfeitable pursuant to 18 U.S.C. § 982(a)(1) including "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation."

Proceeds of a violation involving money laundering are civilly forfeitable pursuant to 18 U.S.C. § 982(a)(1)(C) including "any property real or personal, which constitutes or is derived from, proceeds traceable to a violation of any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7)

Property involved in money laundering is criminally forfeitable pursuant to 18 U.S.C. § 982(a)(1) including "any property, real or personal, involved in such offense, or any property traceable to such property".

Property involved in money laundering is civilly forfeitable pursuant to 18 U.S.C. 981(a)(1)(A) including "any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956".

Proceeds of a violation involving money laundering are administratively forfeitable pursuant to 19 U.S.C. §§ 1607-09 by 21 U.S.C. § 881(d) and 18 U.S.C. § 981(d).

Additionally, 28 U.S.C. § 1355(b)(1)(A) states that "A forfeiture action or proceeding may be brought in – the district court for the district in which any of the acts or omission giving rise to the forfeiture occurred…"

Fungible property can also be forfeited. 18 U.S.C. § 984 provides:

(a)(1) In any forfeiture action in rem in which the subject property is cash…[or] funds deposited into an account in a financial institution…

A) It shall not be necessary for the Government to identify the specific
                property involved in the offense that is the basis for the forfeiture; and

                B) It shall not be a defense that the property involved in such an
                offense has been removed and replaced by identical property.

        (2) Except as provided in subsection (b), any identical property found in the same
        place or account as the property involved in the offense that is the basis for the
        forfeiture shall be subject to the forfeiture of this section.

Further, 18 U.S.C. § 984 provides that, within one year of the commission of the money
laundering offense giving rise to the forfeiture, identical property may be forfeited when it is the
form of funds deposited in an account in a financial institution and found in the same place or
account as the property involved in the offense that is the basis for the forfeiture.

## CONCLUSION

Based on the totality of the facts and circumstances gathered during the investigation into Billy
Ray Allen as presented in this affidavit, I believe that probable cause exists to believe that:

- 2005 Hummer H2, VIN 5GRGN23U25H100635 registered in the name of Pauletta Boggs;
- 2011 Chevrolet Camaro, VIN 2G1FA1ED0B9107317, registered in the name of Pauletta Boggs;
- 2004 Cadillac Escalade, VIN 1GYEK63N04R208966, registered in the name of Genevieve Boggs;
- 1999 Chevrolet Corvette, VIN 1G1YY22G1X5131266, registered in the name of Jack L. Jones;
- 2005 BMW 645, VIN WBAEK73495B325651, registered in the name of Jack L. Jones;

are property purchased using the proceeds of a specified unlawful activity, to wit Allen's drug trafficking and or money laundering activity, and concealed in a nominee names, namely Allen's acquaintances, Genevieve Boggs, Pauletta Boggs, and Jack L. Jones.

**REQUEST FOR SEALING**

It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the applications and search warrants. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

FURTHER, YOUR AFFIANT SAYETH NOT.

_____

Jimmy J. Keith Cline, Jr.
Internal Revenue Service
Criminal Investigation Division

SWORN AND SUBSCRIBED TO BEFORE ME
THIS 4th DAY OF MARCH, 2016.

_____
CLIFTON L. CORKER
UNITED STATES MAGISTRATE JUDGE

18
Case 2:16-mj-00039-MCLC Document 3 Filed 03/04/16 Page 19 of 19 PageID #: 21